**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SPACEAGE CONSULTING CORP., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | No. 2:13-cv-6984 (WHW) |
| | : | |
| RUIMING LU, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

      Defendant Ruiming Lu ("Defendant Lu") moves to dismiss Plaintiff SpaceAge Consulting Corp.'s ("SpaceAge") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Bank of America answered the complaint on January 21, 2014 and makes no motion. Under Federal Rule of Civil Procedure 78(b), this motion is decided without oral argument. Defendant Lu's motion to dismiss is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

      Incorporated in the State of New Jersey, SpaceAge is a software services firm that provides software development, application integration, and technology training services, with its principal place of business at 10 Huron Avenue, Suite #1-N, Jersey City, Hudson County, New Jersey 07306. Compl. ¶ 1 (ECF No. 1). Defendant Lu is a Canadian citizen who is believed upon good faith knowledge to be living somewhere within the province of Ontario, Canada. *Id.* ¶ 2.

**NOT FOR PUBLICATION**

The Court will consider the facts in the light most favorable to the non-moving party, SpaceAge. On October 4, 2006, Defendant Lu entered into a written "train-to-hire" employment agreement with SpaceAge. *Id.* ¶ 27. The "train-to-hire" agreement is a dual agreement, comprising an agreement for the purchase of technology training services and an employment agreement (together, the "Agreement"). *Id.* ¶ 28. Pursuant to the Agreement, SpaceAge agreed to provide Defendant Lu with technical training services until such time that he became capable of working at a client project, and in exchange for training services, Defendant Lu agreed to work exclusively for SpaceAge for a minimum mandatory term of three years from the date he completed his training. *Id.* ¶ 30. According to the Agreement, Defendant Lu agreed that if he failed to work for SpaceAge for three years after completing the training program, he would reimburse SpaceAge for every week of training received at the rate of $1,000 per week,[1] in addition to any expenses incurred by SpaceAge. *Id.* ¶ 31. In addition to reimbursement for training costs, the Agreement contains a clause obligating Defendant Lu to be responsible for payment of business damages in the event of any breach of contract, and also contains provisions governing salary, length of term, "pay-back" clauses, non-compete covenants, and clauses relating to liabilities including liquidated damages. *Id.* ¶¶ 32, 34. The Agreement also calls for Defendant Lu to provide SpaceAge with four weeks' notice for his resignation from SpaceAge. *Id.* ¶ 33.

---

[1] The Agreement designates different training repayment rates based on how long the employee actually works with SpaceAge. *See* Compl. Ex. B (Letter of Commitment) ¶ 8. As example, if the Agreement is broken before the completion of one year, the employee agrees to pay the cost of training at the rate of $1,200 per week for every week of training received, plus any expenses incurred by SpaceAge. *Id.* ¶ 8(a). If the Agreement is terminated after completion of one year and before completion of two years (as it was for Defendant Lu), the employee agrees to repay at a rate of $1,000 per week plus expenses. *Id.* ¶ 8(b). And if the Agreement is terminated after completion of two years and before completion of three years, the employee agrees to repay at a rate of $800 per week plus expenses. *Id.* ¶ 8(c).

**NOT FOR PUBLICATION**

Defendant Lu received training services from SpaceAge for approximately seven weeks from August 16, 2006 to October 8, 2006. *Id.* ¶ 36. On October 9, 2006 he began a client project at the offices of Merrill Lynch in Jersey City, New Jersey. *Id.* Defendant Lu resigned from SpaceAge on March 7, 2008 without giving four weeks' notice. *Id.* ¶ 37. Based on information provided to the CEO of SpaceAge (Surender Malhan) by an employee at Merrill Lynch's Jersey City, New Jersey office, Defendant Lu became an employee of Merrill Lynch and was assigned to Merrill Lynch's offices in Ontario, Canada. *Id.*[2]

**STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, "a district court weighing a motion to dismiss asks 'not

---

[2] Bank of America is the named Defendant in this case. Bank of America became the parent company of Merrill Lynch on January 2, 2009 and assumed all liabilities of Merrill Lynch. This cause of action accrued in March of 2008 when Merrill Lynch was its own corporation, incorporated under the laws of the State of Delaware. Any references to Bank of America and/or Merrill Lynch are to the same defendant. *See* Compl. ¶ 3.

3

**NOT FOR PUBLICATION**

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In evaluating the plaintiff's claims, the court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1357 at 299 (2d ed. 1990). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## DISCUSSION

Plaintiff alleges five counts in its complaint: (I) Defendant Lu's Breach of Contract—Training Costs; (II) Defendant Lu's Breach of Contract—Business Damages; (III) Defendant Lu's Breach of Non-Compete Clause; (IV) Defendant Lu—Unjust Enrichment; and (V) Defendant Bank of America's Tortious Interference of SpaceAge's Business Relationship with Defendant Lu. *See* Compl. ¶¶ 48-68. Defendant Lu moves to dismiss Counts I-IV.[3] Defendant Lu's motion to dismiss as to Counts I-IV is denied.

### I.   Defendant Lu's Breach of Contract: Training Costs, Business Damages and Breach of Non-Compete Clause

A party alleging a breach of contract satisfies its pleading requirements if it alleges "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party

---

[3] Only Defendant Lu moves to dismiss the complaint. Defendant Bank of America filed an answer to the complaint on January 21, 2014. As a result, this opinion does not address Count V: Defendant Bank of America's Tortious Interference of SpaceAge's Business Relationship with Defendant Lu.

**NOT FOR PUBLICATION**

performed its own contractual duties." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J. 2008) (internal citation omitted). SpaceAge's complaint has alleged these elements and sufficient facts to suggest that there was a contract (Compl. ¶¶ 27-35), that Defendant Lu breached that contract (*id.* ¶ 37), that SpaceAge suffered damages as a result (*id.* ¶¶ 50-55, 58-63, 66, 72), and that SpaceAge performed its own contractual duties (*id.* ¶ 36).[4]

The Court is not persuaded by Defendant Lu's argument that the complaint fails to state a claim for breach of contract. Defendant Lu argues that the Agreement (the contract at issue) was "illegal" because it violated federal regulations applicable to non-immigrant H-1B visa holders, specifically 20 C.F.R. § 655.731(c)(10)(i) for imposing a penalty if the employee ceases employment before an agreed date and 20 C.F.R. § 655.731(c)(9)(iii) for seeking civil monetary penalties. Neither of these regulations applies to the present suit.[5]

Section 655.731 is entitled "What is the first LCA requirement, regarding wages?" 20 C.F.R. § 655.731. Section 655.731(c), entitled "Satisfaction of required wage obligation," begins:

> (c) Satisfaction of required wage obligation.
> (1) The required wage must be paid to the employee, cash in hand, free and clear, when due, except that deductions made in accordance with paragraph (c)(9) of this section may reduce the cash wage below the level of the required wage. . . .

---

[4] Defendant Lu does not specifically argue that SpaceAge failed to perform its own contractual duties, and the Court has no reason to believe that it did not.

[5] Defendant Lu was never an H-1B visa holder. *See* Defendant's Br. in Support of Defendant Lu's Motion to Dismiss the Complaint ("Lu Br.") at 1 n.1. Lu was in the United States on a TN non-immigrant visa. *Id.* TN visa regulations are set out in 8 C.F.R. § 214.6, and H-1B regulations are set out in 20 C.F.R. § 655. Defendant Lu argues that both non-immigrant visa holders (H-1B and TN) "are to be afforded the same protections against employers" and therefore that the regulations under 20 C.F.R. § 655 should apply with equal force to Defendant Lu even though he was a TN visa holder. *See id.* (citing *Dandamudi v. Tisch*, 686 F.3d 66, 70 (2d Cir. 2012) (identifying both H-1B and TN visa holders as a group of non-immigrants that are permitted to work in the United States temporarily). This Court does not take a position on how these two groups of non-immigrant visa holders are to be distinguished under the law because it finds that neither regulation Defendant Lu relies on under 20 C.F.R. § 655 is applicable to the present case.

**NOT FOR PUBLICATION**

Section (c)(9) then goes on to say:

> (9) "Authorized deductions," for purposes of the employer's satisfaction of the H-1B required wage obligation, means a deduction from wages in complete compliance with one of the following three sets of criteria (i.e., paragraph (c)(9)(i), (ii), or (iii))—
> (i) Deduction which is required by law (e.g., income tax, FICA); or
> (ii) Deduction which is authorized by a collective bargaining agreement, or is reasonable and customary in the occupation and/or area of employment . . .
> (iii) Deduction which meets the following requirements:
>> (A) Is made in accordance with a voluntary, written authorization by the employee . . .
>> (B) Is for a matter principally for the benefit of the employee . . .
>> (C) Is not a recoupment of the employer's business expense . . .
>> (D) Is an amount that does not exceed the fair market value or the actual cost (whichever is lower) of the matter covered . . .
>> (E) Is an amount that does not exceed the limits set for garnishment of wages in the Consumer Credit Protection Act . . . .

20 C.F.R. § 655.731(c)(9). This section of the C.F.R. deals with "deduction from wages" of H-1B visa holders. This lawsuit, based on the complaint filed by SpaceAge, has nothing to do with the deduction of wages from Defendant Lu, and as a result 20 C.F.R. § 655.731(c)(9)(iii) is plainly inapplicable and does not render the contract at issue "illegal."

As for Section 655.731(c)(10), it provides (in relevant part):

> (10) A deduction from or reduction in the payment of the required wage is not authorized (and is therefore prohibited) for the following purposes (i.e., paragraphs (c)(10)(i) and (ii)):
> (i) A penalty paid by the H-1B nonimmigrant for ceasing employment with the employer prior to a date agreed to by the nonimmigrant and the employer.
>> (A) The employer is not permitted to require (directly or indirectly) that the non-immigrant pay a penalty for ceasing employment with the employer prior to an agreed date. Therefore, the employer shall not make any deduction from or reduction in payment of the required wage to collect such penalty.
>> (B) The employer is permitted to receive bona fide liquidated damages from the H-1B nonimmigrant who ceases employment with the employer prior to an agreed date. However, the requirements of paragraph (c)(9)(iii) of this section must be fully satisfied, if such damages are to be received by the employer via deduction from or reduction in the payment of the required wage.

**NOT FOR PUBLICATION**

> (C) The distinction between liquidated damages (which are permissible) and a penalty (which is prohibited) is to be made on the basis of the applicable State law. . . .

20 C.F.R. § 655.731(c)(10). The plain terms of this provision state that an employer cannot withhold wages from an H-1B visa holder as a penalty for ceasing employment with an employer before a date agreed to by the non-immigrant and the employer. Again, the present suit has nothing to do with the withholding of wages. SpaceAge is seeking damages for Defendant Lu's alleged breach of contract, not attempting to withhold his wages as a penalty for his early termination of his employment contract.[6] For these reasons, neither 20 C.F.R. § 655.731(c)(10)(i) nor 20 C.F.R. § 655.731(c)(9)(iii) is applicable to this case and do not render the Agreement "illegal."

Defendant Lu also argues that SpaceAge is precluded from bringing this action by a Department of Labor Order of November 17, 2006. According to Defendant Lu, in August of 2006, SpaceAge was issued a letter from the Administrator of the Department of Labor alleging "several violations of the H-1B regulations (29 C.F.R. Sect. 655, Subparts H and I)." *See* Gauli-Rufo Cert., Ex. A. Defendant Lu contends that "[a]ll of these violations had to do with SpaceAge's treatment of non-immigrant visa employees, which violated the DOL regulations" and that on "August 15, 2006, Surender Malhan, President and CTO of SpaceAge, was present in court for the DOL violations, when a settlement was reached." Defendant Lu's Mot. to Dismiss at 8 (ECF No. 9-1). As part of that ordered settlement, SpaceAge "agreed to pay twenty, H-1B non-immigrant employees a sum of $224,541 which represented back wages; civil penalties of $113,900 for various violations of DOL regulations; and, it was ordered that SpaceAge and all of its employees

---

[6] Even if this regulation did apply to this case, there would certainly be a dispute about whether the $7,000 in training fees that SpaceAge alleges Defendant Lu owes is a "penalty"—which is a factual determination to be decided under state law. *See Wasserman's Inc. v. Twp. Of Middletown*, 137 N.J. 238, 248-49 (1994). Viewing the facts in the light most favorable to SpaceAge, the Court cannot determine that the $7,000 repayment of training services should be considered a penalty at this stage.

**NOT FOR PUBLICATION**

would be 'disqualified from seeking approval of any H-1B petitions for a one year period.'" *Id.* at 8-9 (quoting Gauli-Rufo Cert., Ex. A). Defendant Lu asserts that less than two months later, Surender Malhan, on behalf of SpaceAge, in spite of this order, entered into an employment contract with Defendant Lu, wherein he agreed to apply for an H-1B non-immigrant work visa for himself. *Id.* at 9. According to Defendant Lu, because of these facts, the contract that SpaceAge entered into with Defendant Lu was "illegal" and "sets forth strong reasons the Complaint in this matter should be dismissed for failure to state a claim upon which relief can be granted." *Id.* at 10.

SpaceAge responds to this argument by stating that the DOL Order is not properly before this Court on a motion to dismiss because the complainant's claims are not based on this document. SpaceAge Opp'n to Mot. to Dismiss at 8 (ECF No. 14) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

This Court finds that regardless of whether the Court can properly take judicial notice of the DOL Order as a public record,[7] nothing about the DOL Order can support Defendant Lu's motion to dismiss in this case. The DOL Order has no factual information whatsoever as to what led to that settlement and order. There is no information about the employment contracts that were at issue in that case (there are no copies of the employment contracts from that case to compare to Defendant Lu's contract), and the Court has no indication at all whether the factual scenario presented in those cases is at all similar to the facts presented in this case. As such it is impossible for this Court to find that based on that settlement and order, the contract between SpaceAge and Defendant Lu is "illegal."

---

[7] *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

NOT FOR PUBLICATION

Because SpaceAge has stated a claim upon which relief can be granted for breach of contract, Defendant Lu's motion to dismiss Counts I-III is denied.

## II.    Defendant Lu's Claim for Unjust Enrichment

SpaceAge brings count four of its complaint under the theory of unjust enrichment (in the event that counts one, two and three are unsuccessful). Compl. ¶¶ 67-72. There are two basic elements to a claim based on unjust enrichment. A plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994). A quasi-contract claim cannot exist when there is an enforceable agreement between the parties. *See Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966).

In support of its unjust enrichment claim, SpaceAge makes a number of assertions. First, SpaceAge alleges that it provided Defendant Lu with "valuable computer-programming training skills while at SpaceAge. These skills can lead to a lucrative salary in the open market. SpaceAge incurred considerable costs to provide Defendant Lu with this training." Compl. ¶ 69. SpaceAge alleges that based upon knowledge and belief "Defendant Lu gained employment with Defendant Merrill Lynch," *id.* ¶ 70, and that "Defendant Lu would likely not have gained employment with Defendant Merrill Lynch, . . . if it were not for SpaceAge . . . send[ing] Defendant Lu to work on a project at Defendant Merill Lynch's offices in Jersey City, NJ," *id.* ¶ 71. Finally, SpaceAge also states that "SpaceAge lost out on business revenue [because] Defendant Lu . . . resigned from SpaceAge and joined Defendant Merrill Lynch as a permanent employee," *id.*, and that "Defendant

**NOT FOR PUBLICATION**

Lu's valuable training at SpaceAge's expense and his attainment of a permanent position at Defendant Merrill Lynch in violation of the non-compete clause caused Defendant Lu to become unjustly enriched to the detriment of SpaceAge," *id.* ¶ 72.

SpaceAge has satisfied its burden of pleading element one of an unjust enrichment claim, the receipt of a benefit by Defendant Lu. Through SpaceAge's train-to-hire contract with Defendant Lu, SpaceAge provided training services to Defendant Lu, which Defendant Lu continues to utilize in his permanent position with Defendant Merrill Lynch and from which he derives benefits. Allegedly, Defendant Lu has not performed under the train-to-hire contract and has not paid SpaceAge back for the training services received (as allegedly required by the contract). As a result, Defendant Lu received a benefit from SpaceAge for which SpaceAge has not been compensated.

To satisfy the second prong of an unjust enrichment claim, that retention of the benefits by Defendant Lu would be unjust, SpaceAge must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant and that the failure of the defendant to provide remuneration enriched defendant beyond its contractual rights." *VRG Corp.*, 135 N.J. at 554. SpaceAge now alleges that in exchange for training services, Defendant Lu agreed to work exclusively for SpaceAge for a mandatory minimum term of three years from the date he completed his training. In the event he failed to work for SpaceAge for three years after completing the training program, he would reimburse SpaceAge for every week of training received at a rate of $1,000 per week, and any expenses incurred by SpaceAge. Compl. ¶¶ 30, 31. SpaceAge has pled sufficient facts to establish that it expected remuneration from Defendant Lu for its training under the train-to-hire contract, and Defendant Lu's failure to provide such remuneration is unjust because, at a minimum, he has benefited from the training services he

**NOT FOR PUBLICATION**

received without properly compensating SpaceAge for them, and he has obtained permanent employment from SpaceAge's client, which was outside the scope of the main contract between SpaceAge and Defendant Lu. SpaceAge has established the second prong of an unjust enrichment claim. The Court denies Defendant Lu's motion to dismiss count four.

## CONCLUSION

Defendant's motion to dismiss Counts I-IV is denied. An appropriate order follows.


Date: April 11, 2014


                                                           **/s/ William H. Walls**
                                                          United States Senior District Judge